**Maria Magdalena TELLEZ–RES-TREPO; Nicolas Caputo–Tellez, Petitioners**

v.

**ATTORNEY GENERAL OF the UNITED STATES, Respondent.**

No. 09–4139.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) June 20, 2011.

Opinion Filed: July 07, 2011.

---

Joseph C. Hohenstein, Esq., Orlow, Kaplan & Hohenstein, Philadelphia, PA, for Petitioners.

Eric H. Holder, Jr., Esq., Thomas W. Hussey, Esq., Sada Manickam, Esq., Annette M. Wietecha, Esq., United States Department of Justice, Office of Immigration Litigation, Civil Division, Washington, DC, for Respondent.

Before: BARRY, AMBRO and COWEN, Circuit Judges.

## OPINION

BARRY, Circuit Judge.

Maria Magdalena Tellez–Restrepo (Tellez) and her son, Nicolas Caputo–Tellez, are native citizens of Colombia and U.S. asylum-seekers seeking reversal of a Board of Immigration Appeals (BIA) removal order. They argue that the record compels finding that undisputed acts of past and threatened violence against them by Revolutionary Armed Forces of Colombia (FARC) guerillas were on account of the protected ground of actual or imputed political opinion. While this case's facts are sympathetic, we will deny their petition in light of the governing law and our standard of review.

## I.  Background

Writing primarily for the parties, our summary of the background will be brief.[1]

Tellez was employed from 1995 to 2000 by Daniel Rebolledo and Sons, a firm based at Bogota's Food Terminal. She collected funds, managed delivery logistics and trucking routes, and had access to all firm accounting information. Apparently the firm became a FARC target because gaining control of shipments and other economic activity at the Food Terminal could serve to undermine the Colombian government, the FARC's aim. According-

---

1. The facts underlying Petitioners' claims are undisputed, and the Immigration Judge (IJ) deemed their testimony, and that of a witness on their behalf, credible. Because Nicolas's own application is a derivative of his mother's application, the analysis herein is applicable to both Petitioners' claims.

ly, Tellez received numerous telephone calls from August to October of 2000 from FARC operatives who demanded sensitive financial, management, and other information. Tellez advised that she did not possess the requested information, but the calls—which she was told to keep secret—continued, both while she was at work, and at home. Callers began threatening to kidnap or kill her then–14–year–old son Nicolas if she did not comply, and she was told that FARC operatives had surveilled his route to school.

On September 21, 2000, Tellez was walking to work when she was abducted and driven, at gunpoint, to a deserted area where she was struck with a piece of wood and left bloodied and unconscious. The attack left her with numerous, permanent injuries, which a physician testified before the IJ are consistent with the attack that she alleged. Within days of her return to work, her employer's adult son Rene was kidnapped and then killed, despite his family having paid a substantial ransom, and ostensibly because the family, which Tellez has described as being wealthy and having influence with the government, contacted authorities about his kidnapping.[2] Meanwhile, the calls continued, with one caller threatening that Tellez's abduction and beating were a "small example of what would happen later on if [she] did not collaborate[.]"

Within a week of Rene's murder, a FARC higher-up advised Tellez that enough time had passed without her cooperation, and he gave her a two-day ultimatum to provide information about the firm's financial transactions and clients. Seeking help seemed inadvisable, and/or

was unavailing: Tellez's employer said there was nothing he could do, and Tellez did not report the attack on her to the police for fear of alerting FARC informants and increasing the risk to her son. Convinced that their lives were in danger, Tellez quit her job.[3] Using nonimmigrant visitor visas that they previously had obtained for travel to Disney World, Tellez and Nicolas fled Colombia for Los Angeles in November 2000.

The Tellezes then overstayed their U.S. visas by several months, and did not seek asylum here before fleeing to Canada to seek it there. When that failed, they reentered the United States in 2007, conceded the grounds for their removability, and initiated the proceedings for asylum and withholding of removal that are now before us.[4] Convinced that she and her son are "marked" by the FARC for retaliation, Tellez's petition for relief argues that her harassment and brutalization constitute both past, and a basis for fear of future, persecution on account of political opinion. The BIA, like the IJ, largely credited the claims of persecution, but concluded that the necessary causal predicate of political opinion was not demonstrated because, despite the Tellezes' professed disagreement with the FARC's political agenda, no evidence indicates that the FARC knew or cared about their political views. Accordingly, the BIA concluded, any future persecution that they might face would be on account of Tellez's past refusal to cooperate—not itself a statutorily protected ground—while no facts support a claim that the FARC could have

2. Tellez herself was not politically active in Colombia, nor was there any evidence that she possessed notable political connections, or was perceived to have them.

3. Tellez was not the only employee harassed, and the FARC's targeting of the firm appar-

ently caused financial and personnel problems sufficient to lead to its later demise.

4. Petitioners also raised United Nations Convention Against Torture claims, which we do not address because they did not press them before us on appeal.

inferred that no motive *other than* political opinion explained her non-compliance.

## II. Discussion

The BIA had jurisdiction pursuant to 8 C.F.R. § 1003.1(b)(3), and we exercise jurisdiction over Petitioners' timely petition for review of the BIA's final order of removal pursuant to 8 U.S.C. § 1252, as amended by the REAL ID Act of 2005, Pub.L. No, 109–13, Div. B, 119 Stat. 231 (2005).[5]

Our review of the BIA's legal decisions is de novo, and we accord deference to its reasonable interpretation of the statutes that it is charged with administering. *Toussaint v. Att'y Gen.*, 455 F.3d 409, 413 (3d Cir.2006) (citation omitted). Where, as here, the BIA issues a merits decision, we review it together with the IJ's analysis to the extent that the BIA defers to or adopts that analysis. *Chavarria v. Gonzalez*, 446 F.3d 508, 515 (3d Cir.2006). The BIA's conclusions regarding evidence of past persecution and the well-founded fear of persecution are findings of fact, and we therefore review these conclusions under the deferential substantial evidence standard. So long as the BIA's decision is supported by reasonable, substantial, and probative evidence on the record considered as a whole, we will not disturb the BIA's disposition of the case. [Assuming it is so-substantiated, a] BIA decision [merits deference and] can only be reversed if the evidence is such that a reasonable factfinder would be compelled to conclude otherwise. *Id.* (internal quotation marks and citations omitted).

Because Tellez applied for the discretionary relief of asylum after the effective date of the REAL ID Act, she had to prove, as relevant here, that "political opinion was or will be at least one central reason for" persecution at the hands of the FARC. 8 U.S.C. § 1158(b)(1)(B)(i). Although she need not have provided direct evidence of the FARC's motives in mistreating her and threatening her son, "[s]he must show that the evidence [s]he presented was so compelling that no reasonable factfinder could fail to find the requisite fear of persecution" *because of* her political opinion. *I.N.S. v. Elias–Zacarias*, 502 U.S. 478, 483–84, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992).[6]

While we do not lightly treat the facts of Tellez's mistreatment by the FARC, the governing law cited above, together with our standard of review, preclude the relief that she seeks. The critical issue is whether her self-described "stubborn refusal" to accede to the FARC operatives' demands can be construed as an unambiguous articulation of her political opinion, such that the FARC harmed her *because of* that opinion. Absent evidence that the FARC knew what her political opinion was, we cannot conclude that the BIA erred in this analysis.

---

5. The BIA also affirmed the IJ's denial of withholding of removal because Tellez failed to meet the lesser burden of proof for asylum. *See Matter of E–A–G–*, 24 I. & N. Dec. 591, 598 (B.I.A.2008), *disagreed with on other grounds by Benitez Ramos v. Holder*, 589 F.3d 426 (7th Cir.2009). Accordingly, there is no analysis of that claim for us to review, nor need we analyze the claim given that we too conclude that there is no basis for reversing the asylum decision.

6. Moreover, we have accepted the BIA's interpretation of the governing statute as providing that "asylum *may not* be granted if a protected ground is only an incidental, tangential, or superficial reason for persecution of an asylum applicant." *Ndayshimiye v. Att'y Gen.*, 557 F.3d 124, 130 (3d Cir.2009) (emphasis added, quotation omitted). It is for this reason that Tellez's argument that the IJ and BIA erroneously applied the "one central reason" rule to the FARC's putative motivation in persecuting her is unavailing.

Whether Tellez's opinion could be imputed is, arguably, a closer question. She urges that refusing to collaborate with a political group whose activities stem from a you're-with-us-or-against-us worldview *is*, by virtue of said refusal, an imputably "political" objection to its agenda. However, no facts suggest that her persistent refusal to accede to the callers' demands had a sufficient nexus to the FARC's agenda such that that refusal could lead them to no other conclusion than that *she* possessed political opinions meriting reprisal. *See Elias–Zacarias*, 502 U.S. at 482–83, 112 S.Ct. 812 (rejecting petitioner's contention that guerillas would automatically construe resistance to their demands as being political in nature). The BIA not unreasonably concluded that the FARC's interest in Tellez related to knowledge that she possessed as an accountant for the now-defunct Rebolledo firm, which the FARC sought to control ostensibly for political purposes. This speaks more to the *FARC's* political orientation than to her own political opinion, as known *by* the FARC and, *ipso facto*, as a basis for persecuting her.

To be sure, we have held that imputed political opinion claims involving an asylum-seeker persecuted by the FARC may prevail where there is evidence of a petitioner's

(1) ... long-term association with the Colombian government and military, (2) [the fact that he] made his living by providing support to those institutions, [and] (3) would not have come to the guerrillas' attention but for his relationship with the government and military,

[and the facts that he] (4) rebuffed repeated overtures from the FARC to join with them, and (5) expressly made his anti-FARC opinions known to the FARC agents attempting to recruit him.

*Espinosa–Cortez v. Att'y Gen.*, 607 F.3d 101, 110, 113 (3d Cir.2010).[7] Given *Espinosa–Cortez*, however, we simply cannot conclude that the BIA contravened the applicable substantial evidence standard as to factfinding or erroneously applied the governing law to the facts. *See Chavarria*, 446 F.3d at 515. While Tellez's refusal to provide information about the Rebolledo firm, which FARC operatives presumably saw as a government ally, may have made her a perceived foe, *Espinosa–Cortez* would require her to establish that it was on the basis of imputed political opinion that they targeted her and/or then escalated their threats. She has not done so. *Cf. Ndayshimiye*, 557 F.3d at 130 (observing that asylum cannot be premised on even a protected ground if evidence for that ground is only incidental, tangential, or superficial).

### III. Conclusion

For the foregoing reasons, and because Tellez's remaining arguments are without merit, we will deny the petition for review.

---

7. *Cf. Martinez–Buendia v. Holder*, 616 F.3d 711, 719 (7th Cir.2010) ("[W]hile there is no evidence that [petitioner] directly communicated her anti-FARC political opinion to a FARC member as clearly as [petitioner in a comparison case] did, the only logical conclusion that the FARC could have drawn from her non-responsiveness in the face of their extreme violence is that she was politically opposed to their cause. [Her] act of hanging up the phone when FARC members called threatening to kill her sister if she did not comply is a clear non-verbal statement that she opposed the FARC."). Tellez cites to this case in her reply brief, but we are bound by *Espinosa–Cortez*.