EASTERBROOK, Chief Judge,
concurring in the judgment.
My colleagues’ discussion of the “social group” question is compatible with recent decisions in this circuit. As the Attorney General has not asked us to overrule these decisions, I concur in the result. But I am skeptical about this circuit’s approach to the subject.
The Immigration and Nationality- Act permits federal officials to grant asylum to aliens who seek refuge here “because of persecution or a well-founded fear of. persecution on account of race, religion, nationality, membership in a particular social group, or political opinion”. 8 U.S.C. § 1101(a)(42)(A). INS v. Elias-Zacarias, 502 U.S. 478,112 S.Ct. 812, 117 L.Ed.2d 38 (1992), holds that a person mistreated by an insurgent group, or caught in a civil war, does not qualify under the “political opinion” part of this subsection unless the alien opposes the group for political reasons and those politics are why the group mistreated him. Escobar contended that his support of Colombia’s Liberal Party caused Fuerzas Armadas. Revolucionarias de Colombia to threaten him and burn his trucks, but the Board of Immigration Appeals found that FARC was indifferent to his politics. This finding led Escobar to contend that FARC had persecuted him on account of his membership in a “social group”. His brief defines the group as “truckers who refused to cooperate with *550 FARC and who collaborated with law enforcement authorities” — in other words, the same kind of conscripts who EliasZacarias held cannot claim automatic protection under the “political opinion” part of § 1101 (a) (42) (A).
What the Seventh Circuit has effectively done in this and other recent cases is read “because of ... membership in a particular social group” in a way that includes everyone threatened by rebels a nation’s government cannot control, just as the Ninth Circuit in Elias-Zacarias had read “because of ... political opinion” in a way that included everyone threatened by rebels. This makes eligible for asylum everyone who faces a substantial risk of harm in his native land, no matter the reason. The Convention Against Torture, S. Treaty Doc. 100-20, 1465 U.N.T.S. 85, see 8 C.F.R. § 208.17 (2008), and the rules for withholding of removal, 8 U.S.C. § 1231(b)(3), offer some protection to persons at risk of injury or death but require a higher burden of persuasion (proof by a preponderance of the evidence that future injury is more likely than not, see INS v. Stevic, 467 U.S. 407, 104 S.Ct. 2489, 81 L.Ed.2d 321 (1984)) than does the asylum program (under which the alien need only establish a well-founded fear, see INS v. Cardoza-Fonseca, 480 U.S. 421, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987)). See Kobugabe v. Gonzales, 440 F.3d 900 (7th Cir. 2006).
The Board of Immigration Appeals has established, in decisions that we must respect — see Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), and Gonzales v. Thomas, 547 U.S. 183, 126 S.Ct. 1613, 164 L.Ed.2d 358 (2006) (applying Chevron to the definition of “social group” in particular) — two requirements of social-group status. One is that membership in a “social group” entails classification by some immutable characteristic, or a characteristic so important that no one should be required to change it. In re Kasinga, 21 I. & N. Dec. 357, 365-66 (BIA 1996). The BIA applied its doctrine here by observing that being a trucker is mutable — and like other occupations is not a vital element of personality. People can and do change jobs or sell one business and open another. This court nominally respects the agency’s limitation of “social group” but has eviscerated it in practice. My colleagues redefine Escobar’s social group as one that comprises everyone who has ever been a trucker who ever refused to cooperate with FARC. Events of a decade ago cannot be changed; thus the Board’s primary defense against limitless expansion of “social group” vanishes. Everyone who seeks asylum in the United States can point to some event in the past, and as the past can’t be changed this event becomes the basis for a claim based on an “immutable characteristic.” See, e.g., Sepulveda v. Gonzales, 464 F.3d 770 (7th Cir.2006) (former employees of a public agency are a social group); Benitez Ramos v. Holder, 589 F.3d 426 (7th Cir.2009) (former gang members are a social group).
Redefining Escobar’s “social group” as “truckers who in the past refused to cooperate with FARC and who formerly collaborated with law enforcement authorities” would not avoid the BIA’s second bulwark: its rule that “social group” cannot be defined just by asking who the persecutors mistreated. In re C — A—, 23 I. & N. Dec. 951, 956 (BIA 2006). For if the persecutors’ acts define a social group, then again § 1101(a)(42)(A) effectively offers asylum to all mistreated persons, whether or not race, religion, politics, or some extrinsically defined characteristics (such as tribal membership) account for the persecution. And again this court professes to accept the Board’s position. My colleagues write: “Giving the Board the Chevron deference it is due, we accept the proposition that a *551 ‘social group’ cannot be defined solely by the fact that its members suffer persecution from the government or from a group that the government cannot or mil not control.” Op. 545. But read to the end of the paragraph in which this sentence appears and see why my colleagues think that the “social group” that Escobar proposes — which, recall, uses refusal to collaborate with FARC as part of the group’s definition — is not ruled out by the Board’s principle: “Escobar falls into a group or class of people who have a special skill that FARC does not want to see used in the service of its enemies.” If that’s not defining “social group” by reference to the persecutor’s selection criteria, I don’t know what would be.
In sum, under this court’s approach, any person mistreated in his native country can specify a “social group” in a circular fashion and then show that the mistreatment occurred because of membership in that ad hoc group. Anyone threatened or injured in the past, or who sought police protection, has an “immutable” characteristic (the past can’t be changed), and the selection criteria used by the persecutor (here, people who own trucks and prefer not to give free transport to rebels, or more generally “have a special skill”) become the defining characteristics of the “social group”. The structure of § 1101(a)(42)(A) unravels, and the distinction between asylum and withholding of removal (or the CAT) collapses.
Surprisingly, the agency has not asked us to revisit the line of cases that has led to today’s decision. Indeed, the agency’s brief does not even cite Elias-Zacarias. Perhaps the Attorney General is relying on the fact that asylum is permissive, while withholding of removal is obligatory. Qualification under § 1101(a)(42)(A) does not require the agency to grant asylum; it just makes an alien eligible for administrative discretion. Perhaps the agency plans to restore a functioning distinction among asylum, withholding of removal, and CAT by careful exercise of that discretion. But the judiciary still should keep these three categories distinct, and I think it unfortunate that this circuit has interpreted § 1101(a)(42)(A) in a way that blurs the statutory lines.