**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

HERMAN PATAYAN SORIANO,
                  *Petitioner,*

       v.

ERIC H. HOLDER JR., Attorney
General,
                  *Respondent.*

No. 05-72116

Agency No.
A077-300-502

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted June 2, 2009*
Pasadena, California

Filed June 26, 2009

Before: Pamela Ann Rymer, Susan P. Graber, and
Carlos T. Bea, Circuit Judges.

Opinion by Judge Graber

---

*The panel unanimously finds this case suitable for decision without oral argument. Fed. R. App. P. 34(a)(2).

## COUNSEL

Tasha Lani Huber, Korenberg & Abramowitz, Sherman Oaks, California, for the petitioner.

Robert G. Stapleton, Criminal Division, U.S. Department of Justice, Washington, D.C., for the respondent.

**OPINION**

GRABER, Circuit Judge:

Do government informants constitute a "particular social group" for purposes of analyzing their eligibility for asylum? We answer that question "no" and, therefore, deny the petition for review.

### FACTUAL AND PROCEDURAL BACKGROUND

Petitioner Herman Patayan Soriano, a native and citizen of the Philippines, entered the United States as a nonimmigrant with authorization to stay for one month. After he overstayed his visa, the government sought to remove him. He applied for asylum, withholding of removal, and protection under the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("CAT"), Dec. 10, 1984, 1465 U.N.T.S. 85, 23 I.L.M. 1027. *See* Regulations Concerning the Convention Against Torture, 64 Fed. Reg. 8478-01 at 8482-83 (Feb. 19, 1999) (codified at various parts of 8 C.F.R.); 8 C.F.R. §§ 208.16-208.18 (1999).

Petitioner, whom the immigration judge ("IJ") expressly believed, fears future persecution because he was a police informant against a Filipino criminal gang. While working at a restaurant in Los Angeles, Petitioner overheard members of the gang describing their crimes in Tagalog, their common native language. He also personally witnessed some of the crimes, including the shipment of methamphetamine and stolen identification documents to the Philippines.

Eventually, Petitioner participated in some of the gang's criminal activities. When he was arrested for possession of stolen mail and receipt of a stolen U.S. Treasury check, Petitioner told the police where two other members of the gang could be located; two months later, they were arrested. By that time, Petitioner had been convicted and was serving time

in prison. He was placed in a single cell "because they already knew that [he was] the one who snitch[ed]."

Some of Petitioner's criminal associates returned to the Philippines, but most were in prison in Los Angeles at the time of the immigration hearing. Petitioner's mother, who lives in the Philippines, told him that "somebody's looking for [Petitioner] and they were asking if I was already deported." Petitioner could not identify specifically whom he fears in the Philippines, but said that he fears "the member[s] of this organize[d] crime." Petitioner does not know whether officials from the United States have told authorities in the Philippines about his acting as an informant.

The IJ denied all forms of relief. The IJ held that Petitioner's fear of future harm in the Philippines lacked a nexus to an enumerated ground upon which asylum or withholding of removal may be granted. The IJ denied CAT relief because Petitioner failed to prove that the Filipino government would torture or harm him, or sanction such torture or harm committed by private individuals.

Petitioner appealed to the Board of Immigration Appeals ("BIA"), which adopted and affirmed the IJ's decision. The BIA held that "government informants needing protection from criminal elements" did not constitute a particular social group. Petitioner filed this timely petition for review.

## DISCUSSION

To be eligible for asylum, an alien must show that he is unwilling or unable to return to his country of origin "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). Petitioner argues that he fears future persecution on account of his "political opinion" and membership in a "particular social group." He argues that his opposition

to organized crime constitutes a political opinion and that, as someone who gave information to the police, "he is forever-more a member of a social group of 'government informants.' " We will consider each theory in turn.[1]

A.   *Political Opinion*

[1] To show that he was persecuted on account of a political opinion, Petitioner must satisfy two requirements. First, he must show that he held (or his persecutors believed that he held) a political opinion. *Ernesto Navas v. INS*, 217 F.3d 646, 656 (9th Cir. 2000). Second, he must show that his persecutors persecuted him (or that he faces the prospect of such persecution) because of his political opinion. *Id.*

[2] Here, Petitioner failed to satisfy either requirement. The record contains no evidence that he held (or that the gang members believed that he held) any political opinion. Nor does the record contain evidence that gang members threatened him because of his political opinion. After associating with gang members and criminals for years, Petitioner, immediately after being arrested, identified for police two individuals as criminal suspects. The BIA permissibly found that Petitioner's fear of future persecution stems from the criminals' motive to retaliate against him for informing on them. Personal animosity is not political opinion. *See Zayas-Marini*

---

[1]We review the BIA's legal conclusions de novo. *Azanor v. Ashcroft*, 364 F.3d 1013, 1018 (9th Cir. 2004). When, as here, the BIA's decision is an unpublished decision by one member of the BIA, we give *Skidmore* deference to the BIA's "interpretation of the governing statutes and regulations," recognizing that, " 'while not controlling upon the courts by reason of their authority, [these interpretations] do constitute a body of experience.' " *Garcia-Quintero v. Gonzales*, 455 F.3d 1006, 1011, 1014 (9th Cir. 2006) (alteration in original) (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)). *See* discussion *infra* p. 8018. "Factual findings made by the BIA are reviewed under the deferential substantial evidence standard and will be upheld unless the evidence compels a contrary result." *Ochoa v. Gonzales*, 406 F.3d 1166, 1169 (9th Cir. 2005).

*v. INS*, 785 F.2d 801, 806 (9th Cir. 1986) (holding that a petitioner who feared persecution because of personal animosity and not a political opinion was not entitled to asylum).

*Briones v. INS*, 175 F.3d 727 (9th Cir. 1999) (en banc), is easily distinguishable. In *Briones*, the petitioner applied for political asylum because he was actively involved "in a fiercely ideological dispute between the government of the Philippines and the Communist [New Peoples Army]." *Id.* at 728-29. We held that the petitioner's "activity as a confidential informer who sided with the Philippine military in a conflict that was political at its core certainly would be perceived as a political act by the group informed upon." *Id.* at 729. Because the petitioner was a participant in a civil conflict, his fear of persecution was connected to his political opinion. *Id.*

**[3]** By contrast, here, Petitioner's only act in opposition to organized crime was informing the police after his arrest about two individuals who had engaged in criminal activities. Petitioner did not provide information to one political party about an opposing political party, let alone do so on a regular basis. For these reasons, the BIA properly found that there was no nexus between Petitioner's fear of future persecution and his actual or imputed political opinion.

## B. *Member of a Social Group*

**[4]** We have defined "social group," for purposes of asylum, as any group

> united by 1) a voluntary association which imparts some common characteristic that is fundamental to the members' identities, or 2) an innate characteristic which is so fundamental to the identities or consciences of its members they either cannot or should not be required to change it.

*Arteaga v. Mukasey*, 511 F.3d 940, 944 (9th Cir. 2007). In determining whether a social group exists, we consider,

among other factors, "whether a group's shared characteristic gives members social visibility and whether the group can be defined with sufficient particularity to delimit its membership." *Id.* at 944-45.

Petitioner argues that he is eligible for asylum because he is a member of a particular social group, namely, a group of "government informants." Petitioner argues that, having given incriminating information about two individuals to the police, he is a member of such a group. He reasons that membership in the group is unchangeable because he already has given the information to police and because the individuals about whom he told the police know his identity.

**[5]** We have not previously considered whether "government informants" are a particular social group for immigration purposes. The BIA has held in a precedential opinion that "noncriminal drug informants working against the Cali drug cartel," who act "out of a sense of civic duty and moral responsibility," do not constitute a "particular social group" for asylum purposes. *In Re C-A-*, 23 I. & N. Dec. 951, 957, 959 (B.I.A. 2006). We accord *Chevron* deference to that decision, *Ramos-Lopez v. Holder*, 563 F.3d 855, 859 (9th Cir. 2009), but such deference does not quite answer the question in this case. Here, we face a *criminal* government informant who neither acts from altruistic motives nor turns in participants in a *drug cartel*. We therefore turn more specifically to the decision below.

In this case, the BIA has held that a group comprised of government informants "is not a valid social group for asylum purposes." This court gives *Skidmore* deference to that holding, *Garcia-Quintero*, 455 F.3d at 1011, and our own case law accords with the BIA's ruling.

In *Sanchez-Trujillo v. INS*, 801 F.2d 1571, 1572, 1577 (9th Cir. 1986), we held that a purported social group of "young, working class males who have not served in the military of El

Salvador" was too "all-encompassing [a] grouping" to constitute "that type of cohesive, homogeneous group to which we believe the term 'particular social group' was intended to apply." A key to establishing a "particular social group" is ensuring that the group is narrowly defined:

> Major segments of the population of an embattled nation, even though undoubtedly at some risk from general political violence, will rarely, if ever, constitute a distinct "social group" for the purposes of establishing refugee status. To hold otherwise would be tantamount to extending refugee status to every alien displaced by general conditions of unrest or violence in his or her home country.

*Id.* at 1577. Moreover, "[i]ndividuals falling within the parameters of this sweeping demographic division naturally manifest a plethora of different lifestyles, varying interests, diverse cultures, and contrary political leanings." *Id.*

In *Ochoa*, we relied on the reasoning in *Sanchez-Trujillo* to reject a claim that "a social group comprised of business owners in Colombia who rejected demands by narco-traffickers to participate in illegal activity" was a particular social group because the group was not defined narrowly enough. *Ochoa*, 406 F.3d at 1170. We reasoned that "[t]here is no unifying relationship or characteristic to narrow this diverse and disconnected group. This category is too broad to qualify as a particularized social group for the purposes of asylum and withholding of removal." *Id.* at 1171.

Finally, in *Santos-Lemus v. Mukasey*, 542 F.3d 738, 745-46 (9th Cir. 2008), we rejected a claim that a group of "young men in El Salvador resisting gang violence" comprises a "social group" for purposes of asylum. We held that the purported group "is too loosely defined to meet the requirement for particularity" and that it "is composed of a variety of different individuals who may be victims of civil unrest, but who

do not form a cohesive or particular social group." *Id.* In addition, the purported group "lacks social visibility." *Id.* at 746. We held that "[s]ocial visibility requires that 'the shared characteristic of the group should generally be recognizable by others in the community.' " *Id.* (quoting *In re S-E-G-*, 24 I. & N. Dec. 579, 586 (B.I.A. 2008)).

**[6]** Those cases lead us to conclude that a "government informant" is not a member of a particular social group for purposes of asylum. Just like the young men who failed to serve in the El Salvadoran military in *Sanchez-Trujillo*, the business owners in *Ochoa*, and the young men who refused to join gangs in *Santos-Lemus*, a "government informant," as Petitioner defines it, is not a "cohesive, homogeneous" group. *Sanchez-Trujillo*, 801 F.2d at 1577. A person who identifies as a "government informant" can be anyone of any demographic description who passes information to government authorities for any purpose. There is no "innate characteristic which is so fundamental to the identities or consciences" of government informants that identifies them as a particular social group. *Arteaga*, 511 F.3d at 944. The purported group, therefore, "naturally manifest[s] a plethora of different lifestyles, varying interests, diverse cultures, and contrary political leanings." *Sanchez-Trujillo*, 801 F.2d at 1577.

**[7]** Accordingly, we hold that "government informants" do not comprise a particular social group within the meaning of 8 U.S.C. § 1101(a)(42)(A). We therefore deny Petitioner's applications for asylum and withholding of removal.

**[8]** With regard to Petitioner's CAT claim, Petitioner must establish that it is more likely than not that he would be tortured if returned to the proposed country of removal. 8 C.F.R. § 208.16(c)(2). There is no evidence showing a likelihood of torture by gang members if Petitioner were to return to the Philippines. Importantly, Petitioner did not present any evidence demonstrating that he would be subject to torture committed by or with the consent of Filipino government officials.

Therefore, substantial evidence supports the denial of CAT relief.

Petition DENIED.