**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| ROCIO BRENDA HENRIQUEZ-RIVAS, | No. 09-71571 |
| Petitioner, | |
| v. | Agency No. A098-660-718 |
| ERIC H. HOLDER, Jr., Attorney General, | MEMORANDUM[*] |
| Respondent. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted June 15, 2011
San Francisco, California

Before: SCHROEDER, RIPPLE,[**] and BEA, Circuit Judges.

Petitioner Rocio Henriquez-Rivas, a native and citizen of El Salvador,

petitions for review of a decision of the Board of Immigration Appeals ("BIA")

sustaining the government's appeal of an Immigration Judge's ("IJ") grant of

asylum, and denying her applications for withholding of removal, and protection

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

[**]    The Honorable Kenneth F. Ripple, Senior Circuit Judge for the United States Court of Appeals for the Seventh Circuit, sitting by designation.

under the Convention Against Torture. Henriquez-Rivas witnessed her father's murder by Mara Salvatrucha ("MS") gang members and asserted a fear of future persecution on account of her membership in a social group comprised of individuals who testified against gang members in court. The BIA held that Henriquez-Rivas had not established that her proposed group was one within the meaning of the Immigration and Nationality Act ("the Act") and she therefore failed to establish a nexus to a protected ground.

Henriquez-Rivas contends that she has shown membership in a protected social group because people who testified against gang members in court share a past experience that cannot be changed, and hence, share an immutable characteristic. *See Matter of Acosta*, 19 I. & N. Dec. 211, 233 (BIA 1985). As the BIA and this Court have recognized, shared past experience is not dispositive. *See Matter of S-E-G-*, 24 I. & N. Dec. 579, 584 (BIA 2008); *see also Ramos-Lopez v. Holder*, 563 F.3d 855, 861 (9th Cir. 2009) (concluding that the BIA's decision in *Matter of S-E-G-* was not arbitrary or capricious); *Donchev v. Mukasey*, 553 F.3d 1206, 1217 (9th Cir. 2009) ("The immutable characteristic is a sine qua non for status as a member of a 'particular social group,' though it is not by itself sufficient."). The key to establishing a particular social group is to ensure that the

group is narrowly defined to delimit its membership. *Matter of S-E-G*, 24 I. & N. Dec. at 582; *Soriano v. Holder*, 569 F.3d 1162, 1166 (9th Cir. 2009).

We have held that petitioners asserting membership in groups very similar to Henriquez-Rivas's proposed group cannot qualify under the Act. *See, e.g.*, *Velasco-Cervantes v. Holder*, 593 F.3d 975, 978–79 (9th Cir. 2010) (concluding that a proposed group comprising of material witnesses for the government does not qualify because it cannot be defined with sufficient particularity since any person of any origin can be involuntarily placed in that role); *Soriano*, 569 F.3d at 1166 (concluding that government informants do not qualify as a social group); *Santos-Lemus v. Mukasey*, 542 F.3d 738, 746 (9th Cir. 2008) (concluding that young men in El Salvador resisting gang violence does not qualify as a particular social group). Accordingly, Henriquez-Rivas's claim is precluded by this Court's precedent.

We reject Henriquez-Rivas's contention that the BIA should have considered her claim that she was persecuted based on her political opinion. The record reflects that Henriquez-Rivas did not raise this issue to the BIA for its consideration. *See Zhang v. Ashcroft*, 388 F.3d 713, 721 (9th Cir. 2004) (stating that a petitioner must raise the issue in a manner sufficient "to put the BIA on notice" that she is challenging the IJ's determination).

**PETITION FOR REVIEW DENIED**.

*Henriquez-Rivas v. Holder*, 09-71571

BEA, Circuit Judge, concurring, joined by RIPPLE, Circuit Judge:

The majority faithfully applies this court's precedent to hold that petitioner Rocio Henriquez-Rivas's proposed social group—comprised of people who testified against gang members in El Salvador—is not a "particular social group" under INA § 208(b)(1). I write separately not because I quarrel with the majority's application of our precedent, but because I question whether those prior holdings best track the language and intent of the INA, or follow the BIA's published interpretations of § 208(b)(1)—which, given the patent ambiguity in the term "particular social group," are entitled to *Chevron* deference. Were I writing on a clean slate—an honor reserved only for an en banc panel—and to accord proper deference to the BIA's interpretations, I would hold that Hernandez-Rivas's proposed group (persons who have risked their lives by testifying in open court against murderous gangs) has sufficient "social visibility" and "particularity" to qualify as a particular social group for purposes of asylum.

At the age of twelve, while living in her native El Salvador, Henriquez-Rivas witnessed her father's murder at the hands of the Mara Salvatrucha ("MS") gang. Henriquez-Rivas testified in Salvadoran court against three MS members—two of whom were convicted of her father's murder. After the trial, suspected MS

1

members visited Henriquez-Rivas's home and school looking for her.  Fearing for her safety, Henriquez-Rivas fled El Salvador.  She was detained at the U.S.-Mexico border and charged as removable.  She filed an application for asylum, withholding of removal, and CAT relief, contending that she had a well-founded fear of future persecution based on her membership in a particular social group comprised of individuals who had testified against gang members in Salvadoran court.

The Immigration Judge granted Henriquez-Rivas asylum, holding that her proposed social group was cognizable, and that she had a well-founded fear of persecution should she be removed to El Salvador.[1]  However, the government appealed, and the BIA reversed.  The BIA held that Henriquez-Rivas's proposed social group was not cognizable under § 208(b)(1) because it lacked "social visibility" and "particularity" under the test set forth by the BIA in *Matter of C-A-*, 23 I. & N. Dec. 951 (BIA 2006).

The majority here denies Henriquez-Rivas's petition for review of the BIA's

---

[1]  There can be little doubt that Henriquez-Rivas's fear of future persecution in El Salvador is well-founded.  The IJ so found, and the BIA did not disturb, or even address, *that* holding.  The issue before us is solely whether that persecution in El Salvador is based on one of the five recognized grounds in INA § 208(b)(1): race, religion, nationality, membership in a particular social group, or political opinion.

2

ruling, relying on our holdings that groups of government informants who provide information or testify against criminal elements do not constitute particular social groups. *See, e.g.*, *Soriano v. Holder*, 569 F.3d 1162, 1165 (9th Cir. 2009) (holding that a class of government informants against Filipino criminal gangs is not a cognizable social group); *Velasco-Cervantes v. Holder*, 593 F.3d 975, 978 (9th Cir. 2010) (finding that material witnesses for the U.S. government's prosecution of alleged alien smugglers do not constitute a particular social group). I agree that our panel is bound by this analogous precedent, but several factors cause me to question whether this line of cases is indeed faithful to the INA and to the BIA's interpretations of the statute.

First, it must be acknowledged that the term "particular social group" is ambiguous. The INA does not define the term, and the BIA has defined it only at a high level of generality. In *Matter of Acosta*, 19 I. & N. Dec. 211 (BIA 1985), the BIA reviewed the IJ's denial of asylum for a Salvadoran cab driver who claimed that he faced future persecution on account of his membership in a particular social group consisting of Salvadoran cab drivers who were threatened by anti-government guerillas for refusing to partake in work stoppages. *Id*. at 232. In affirming the IJ's ruling that Acosta's proposed group was not cognizable, the BIA explained:

3

> [W]e interpret the phrase "persecution on account of membership in a particular social group" to mean persecution that is directed toward an individual who is a member of a group of persons all of whom share a common, immutable characteristic. The shared characteristic might be an innate one such as sex, color, or kinship ties, or *in some circumstances it might be a shared past experience such as former military leadership or land ownership*. The particular kind of group characteristic that will qualify under this construction remains to be determined on a case-by-case basis. However, whatever the common characteristic that defines the group, *it must be one that the members of the group either cannot change, or should not be required to change because it is fundamental to their individual identities or consciences*.

*Id*. at 233–34 (emphases added). From this language, our court has identified two types of qualifying social groups:

> 1) a voluntary association which imparts some common characteristic that is fundamental to the members' identities, or 2) an innate characteristic which is so fundamental to the identities or consciences of its members they either cannot or should not be required to change it.

*Soriano*, 569 F.3d at 1165. To determine whether a proposed social group falls within one of these categories, this court looks to the two primary factors identified by the BIA: (1) whether a group's shared characteristic gives members "social visibility," and (2) whether the group can be defined with sufficient "particularity" to delimit its membership. *See Matter of C-A-*; *see also Soriano*, 569 F.3d at 1165.

But, instead of clarifying the "particular social group" analysis, identification of these two factors has only compounded the confusion. Neither

4

this court's opinions, nor those of the BIA, have clearly defined the social visibility and particularity factors, nor provided reasoned applications of those factors to the facts of each case. Instead, we have practically ignored the first prong, social visibility—a prong which Judge Posner, writing for the Seventh Circuit, has concluded "makes no sense," *see Gatimi v. Holder*, 578 F.3d 611, 615 (7th Cir. 2009).[2] Our opinions note that "social visibility requires that the 'shared characteristic of the group should generally be recognizable by others in the community." *Id*. at 1166 (quoting *Santos-Lemus v. Mukasey*, 542 F.3d 738, 745–46 (9th Cir. 2008). But we have not specified the relevant community for this analysis (Petitioner's social circle? Petitioner's native country as a whole? The

---

[2]  Judge Posner noted:

[N]or has the Board attempted, in this or any other case, to explain the reasoning behind the criterion of social visibility. Women who have not yet undergone female genital mutilation in tribes that practice it do not look different from anyone else. A homosexual in a homophobic society will pass as heterosexual. If you are a member of a group that has been targeted for assassination or torture or some other mode of persecution, you will take pains to avoid being socially visible; and to the extent that the members of the target group are successful in remaining invisible, they will not be "seen" by other people in the society "as a segment of the population."

*Gatimi*, 578 F.3d at 615.

United States?  The global community?).[3]  Nor have we specified whether "social

visibility" requires that the immutable characteristic particular to the group be

readily identifiable to a stranger on the street, or must simply be "recognizable" in

some more general sense to the community at-large.

Moreover, although our opinions include greater discussion of the

particularity factor, we have not applied that factor consistently, and our reasoning

is frequently at odds with the BIA's published opinions on the matter.  Most

notably, our cases disagree whether unity of origin, or some other demographic tie,

is a *sine qua non* for a finding of particularity.  For example, in *Soriano*, a Filipino

man petitioned for review of the BIA's decision affirming the IJ's denial of

asylum, withholding of removal, and CAT relief.  569 F.3d at 1163.  Soriano

contended that he had a well-founded fear of future persecution in the Philippines

because he had acted as a police informant against a Filipino criminal gang while

living in Los Angeles.  *Id*.

The IJ and BIA denied Soriano relief, and this court denied his petition for

review.  The panel held that Soriano's proposed social group of government

_____

[3] Some may think that we *held* the relevant community for purposes of
"social visibility" is the alien's home country, the country he seeks to avoid.  *See
Santos-Lemus v. Mukasey*, 542 F.3d 738, 745 (9th Cir. 2008).  Two things: (1) we
*held* no such thing; we recited a BIA decision; and (2) that language had to do with
the "particularity" prong, not the "social visibility" prong.

6

informants against gangs lacked sufficient particularity to delimit the group's

membership because:

> A person who identifies as a "government informant" can be anyone
> of any demographic description who passes information to
> government authorities for any purpose. There is no "innate
> characteristic which is so fundamental to the identities or consciences"
> of government informants that identifies them as a particular social
> group. The purported group, therefore, "naturally manifest[s] a
> plethora of different lifestyles, varying interests, diverse cultures, and
> contrary political leanings."

*Id*. (internal citations and quotation marks omitted). *See also Velasco-Cervantes*,

593 F.3d at 978 (rejecting a proposed group of former material witnesses for the

United States government for lack of particularity because *"any person of any*

*origin* can be involuntarily placed in that role in any type of legal proceeding")

(emphasis added).

But this reasoning conflicts with the BIA's interpretation of § 208(b)(1),

namely that members of a particular social group need *not* share kinship ties or

origin, or have identical interests, lifestyles, or political leanings, to qualify for

asylum. In *Acosta*, the BIA stated that—in addition to sex, color, or

kinship—"shared past experience such as former military leadership or land

ownership" could be a sufficient immutable characteristic for a particular social

group. 19 I. & N. Dec. at 233–34. These paradigmatic groups based solely on

7

shared past experiences (former military leadership or land ownership) could include "any person of any origin" and people with "a plethora of different lifestyles, varying interests, diverse cultures, and contrary political leanings."[4]

Furthermore, our own cases are not consistent on the issue of shared kinship or origin as a *sine qua non* of particularity. For example, in *Hernandez-Montiel v. INS*, 225 F.3d 1084 (9th. Cir. 2000), petitioner—a Mexican national—applied for asylum on the basis that he had a well-founded fear of future persecution based on his membership in a particular social group comprised of homosexuals with female sexual identities living in Mexico. *Id*. at 1087. The IJ and BIA denied petitioner asylum, but this court granted his petition for review. *Id*. at 1099. This court held, as matter of law, that homosexuals with female sexual identities qualified as a particular social group because they shared a common immutable characteristic "so fundamental to one's identity that a person should not be required to abandon [it]." *Id*. at 1093. This despite the fact that members of the proposed group: (1) could come from any origin or bloodline, and (2) did not necessarily share any beliefs or interests other than their sexual identity—the stated reasons for rejecting the

---

[4] To show the diversity of origin of persons who have been military leaders, compare Napoleon to the Duke of Wellington, or Fidel Castro, from a Spanish landowning sugar plantation family, to his mestizo, lower-class predecessor, Fulgencio Batista.

proposed social groups in *Velasco-Cervantes* and *Soriano*, respectively.

In a word, some of our cases take as a touchstone for the "particularity" requirement, some aspect of identity (birth location, sexual orientation, kinship), which may be immutable, but reject others (such as voluntary inclusion in an informant group) that, *once accomplished*, are similarly immutable. Given the current confusion in our law, there is no discernible basis for these divergent outcomes—other than, perhaps, a given panel's sympathy for the characteristics of the group at issue. Somalian women threatened with female genital mutilation are a particular social group, *Mohammed v. Gonzales*, 400 F.3d 785 (9th Cir. 2005), while government witnesses threatened with death for their testimony against violent gang members are not, *Soriano*, 569 F.3d at 1166. Mexican men with female sexual identities are a particular social group, *Hernandez-Montiel*, 225 F.3d at 1084, while teenage boys in Honduras threatened with death for resisting MS-13 recruitment are not. *Ramos-Lopez v. Holder*, 563 F.3d 855, 861 (9th Cir. 2009). A petitioner fighting for her right to remain in this country and avoid persecution in her native land deserves a legal system governed not by the vagaries and policy preferences of a given panel, but by well-defined and consistently-applied rules.

Finally, our "particular social group" cases are not just internally inconsistent, but are also at odds with holdings of the Fourth, Sixth, and Seventh

9

circuits in factually similar cases. For example, in *Crespin-Valladares v. Holder*, 632 F.3d 117 (4th Cir. 2011), petitioners were Salvadoran nationals who applied for asylum because they had received death threats after one of their relatives testified against MS-13 gang members in a murder trial in El Salvador. *Id.* at 120. Petitioners contended they had a well-founded fear of future persecution based on their membership in a particular social group consisting of "family members of those who actively oppose gangs in El Salvador by agreeing to be prosecutorial witnesses." *Id.* at 121. The IJ granted petitioners asylum, but the BIA reversed, holding that the proposed social group was not cognizable. *Id.*

The Fourth Circuit reversed the BIA. *Id.* The court held that the proposed group was socially visible because the petitioners' cousin had publicly cooperated with the government and testified in court, and the gang knew that petitioners were related to the witness. *Id.* at 126. The court also held that the group satisfied the particularity element because the witness's testimony in court and the kinship ties between petitioners and the witness could be readily verified; thus, membership in the group could be delimited. *Id.*[5]

_____

[5] It should be noted that the proposed social group in *Crespin* included only *family members* of the witnesses and not the witnesses *themselves*. However, to my mind, if the family members of witnesses are deemed socially visible and particular, the witnesses themselves—a more particular *and* socially visible and smaller class of people—must, *a fortiori*, meet those requirements as well. It may

Similarly, in *Ramos v. Holder*, 589 F.3d 426 (7th Cir. 2009), petitioner was a former member of the Mara Salvatrucha gang in El Salvador (the gang against which Henriquez-Rivas testified). *Id*. at 428. Petitioner had quit the gang, become a born-again Christian, and emigrated to the United States. *Id*. Petitioner applied for asylum and withholding of removal, contending that he had a well-founded fear of future persecution based on his membership in a particular social group consisting of former MS gang members. *Id*. The IJ and BIA found the proposed group was not cognizable. *Id*. The Seventh Circuit reversed. *Id*. Judge Posner held that the group was socially visible to Salvadoran society as a whole, and that former membership in a "specific, well-recognized, indeed notorious gang" (MS) was an immutable—and verifiable—characteristic which was impossible to change. *Id*. at 429; *see also Urbina-Mejia v. Holder*, 597 F.3d 360 (6th Cir. 2010) (holding that former members of the "18th Street Gang" in Honduras constituted a particular social group for asylum purposes).

In conclusion, our panel is left with little direction on how to apply the two-

---

be that family members of a government witness or former gang member become subject to persecution through no act of their own, while a witness, informant, or former gang member chooses his path or paths. But once on that road, his persona is immutable, and newly laudable. Should we not encourage the gang members to turn against their murderous former cohorts with at least the same concern for their safety as we show for the former gangster's family?

factor test for particular social groups. Because the relevant factors have been neither explained nor consistently applied by our court, I agree with the majority that the holdings in *Soriano* and *Velasco-Cervantes* are difficult to distinguish and must be followed under our "law of the circuit" jurisprudence. *See Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc) (holding that a three-judge panel's resolution of a legal issue in a published opinion binds all subsequent three-judge panels—unless the earlier panel is overruled by the Supreme Court or an en banc court).

However, were I writing on a clean slate, interpreting § 208(b)(1) with proper *Chevron* deference to the BIA's language in *Acosta* and *Matter of C-A-*, I would follow the reasoning of our sister circuits to find that Henriquez-Rivas's proposed group has sufficient social visibility and particularity to qualify as a particular social group. In addition to the specific threats against Henriquez-Rivas, there is significant evidence that Salvadoran society recognizes the unique vulnerability of people who testify against MS gang members. Most notably, as Henriquez-Rivas noted in her briefing before the IJ and BIA, the Salvadoran legislature enacted a special witness protection law in 2006 to protect people who testify against violent criminal elements, such as MS, in Salvadoran court. *See* U.S. Dep't of State, Country Report on Human Rights Practices: El Salvador at 6

12

(2006); *See also MCA, Inc. v. U.S.*, 685 F.2d 1099, 1104 n.2 (9th Cir. 1982) (noting that this court may take judicial notice of foreign laws under Fed.R.Civ.P. 44.1 if the parties give written notice of their intent to raise an issue of foreign law). It is difficult to imagine better evidence that a society recognizes a particular class of individuals as uniquely vulnerable than that a special witness protection law has been tailored to their characteristics. Furthermore, as in *Crespin*, membership in Henriquez-Rivas's proposed class can be easily verified–and thus delimited—through court records documenting the petitioner's testimony against a gang.

Given the number and significance of these cases in our circuit, I believe this issue merits further examination to ensure that our precedent accurately tracks the language of the INA and affords proper deference to the BIA's proclamations on the matter.