**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

|  |  |
|---|---|
| OLAKUNLE OSHODI, AKA Bode Okeowo, AKA Olakunle Akintola Oshodi, AKA Olakunle Akintola Akinbayo Oshodi, AKA Isaac Oliver Alger, AKA Curtis Evans, AKA Bode Olacune Okeowo, AKA Isaac Okeowo, *Petitioner-Appellant,* <br><br> v. <br><br> ERIC H. HOLDER JR.,* Attorney General, *Respondent-Appellee.* | No. 08-71478 <br><br> Agency No. A023-484-662 <br><br> OPINION |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted December 10, 2009
Submission Withdrawn December 24, 2009
Resubmitted August 27, 2010
Submission Withdrawn and Deferred September 30, 2010
Resubmitted June 24, 2011
San Francisco, California

Filed January 26, 2012

---

*Eric H. Holder Jr. is substituted for his predecessor Michael B. Mukasey as Attorney General of the United States. Fed. R. App. P. 43(c)(2).

Before: Diarmuid F. O'Scannlain, and Johnnie B. Rawlinson, Circuit Judges, and Robert E. Cowen,** Senior Circuit Judge.

Opinion by Judge Rawlinson

---

**The Honorable Robert E. Cowen, Senior United States Circuit Judge for the Third Circuit, sitting by designation.

## COUNSEL

Petitioner Olakunle Oshodi is represented by Leon Fresco, Marlysha Myrthil, and Christopher Nugent (argued), Holland & Knight, LLP, Jacksonville, Florida.

Respondent Attorney General Eric H. Holder Jr. is represented by Michael F. Hertz, Acting Assistant Attorney General, Civil Division; Anh-Thu P. Mai-Windle, Senior Litigation Counsel; and Imran R. Zaidi, Trial Attorney (argued), Office of Immigration Litigation, United States Department of Justice, Washington, D.C.

## OPINION

RAWLINSON, Circuit Judge:

Olakunle Oshodi petitions this court for review of a decision by the Board of Immigration Appeals (BIA) affirming the immigration judge (IJ), who made an adverse credibility determination and denied Oshodi's requests for withholding of removal and relief pursuant to the Convention Against Torture (CAT).[1]

We have jurisdiction pursuant to 8 U.S.C. § 1252, and we deny the petition for review.

---

[1]Oshodi does not appeal the IJ's denial of his asylum claim.

## I. BACKGROUND

### A. Oshodi's Asylum Application

Oshodi, a citizen of Nigeria, requested asylum, withholding of removal, and protection under CAT based on his fear of persecution and torture due to his religion and political opinions.

In his declaration, Oshodi stated that his mother was killed in 1968 by "anti-democratic officers" because of her political activities. When Oshodi was sixteen he joined the National Association of Nigerian Students (NANS), a group that opposed the security forces, and when he returned to Nigeria in 1981, he joined the Unity Party of Nigeria (UPN), a group that opposed the government and security forces.

Oshodi described three incidents of persecution. First, Oshodi attended a rally against the government and was beaten by police, but escaped arrest. Second, in February, 1981, Oshodi and his friend drove through a police checkpoint after the police saw "political propaganda." According to Oshodi, the police shot at the car and hit Oshodi's friend, who died eight days later. The police detained and tortured Oshodi for two days until his uncle paid for his release. Thereafter, an open warrant was issued against Oshodi for failing to report for weekly monitoring. Third, on February 17, 1981, the police arrested Oshodi after he dropped a party member off at the airport. The police drove Oshodi to an unknown location where he was "shot in the foot, burnt with cigarettes, elctric [sic] shocked, beaten with swagger canes, pistol and riffle [sic] whipped, stripped nude" and sodomized with "swagger canes" and "dirty bottles". After this incident, Oshodi returned to the United States.

### B. Professor Mitchell's and Oshodi's Testimony

Professor Mitchell, a Nigerian expert, testified that "a member of NANS who has been in political exile and who is

regarded as being an opponent of the Nigerian government would likely be detained and tortured should he be returned." Professor Mitchell noted that a member of the UPN "wouldn't have nearly the same difficulty he would be [sic] as a member of NANS", but that it would be "horrific" for Oshodi to return to Nigeria based on "the treatment of people who have been in detention, especially who return under those circumstances under a warrant . . ." When questioned about Oshodi's father, Professor Mitchell stated that he "could be mistaken", but he believed Oshodi's father was living in "southern California".

When Oshodi began to testify regarding his political involvement and the political rally he attended, the IJ told Oshodi he had read Oshodi's application and did not need Oshodi's testimony "line by line". Oshodi then testified about his political activities, and that he believed he would "be tortured, detained, [and] most likely killed" if he returned to Nigeria.

During cross-examination, Oshodi stated that his father was deceased, and that he signed the sworn statement stating that his father was involved in politics instead of his "granddad" because he was rushed. When asked about why his name was not on the deed to the Nigerian property he said was confiscated, Oshodi answered that the "deed never transferred to [his] name", but he paid taxes on the property and received income from it.

On re-direct examination, Oshodi explained that he used aliases to "hide [his] identity from Nigerians", and that his last name is well known in Nigeria. When questioned by the IJ, Oshodi stated that his father had been "back and forth" from Nigeria, that he only listed three siblings on his application because "some of [his siblings] are half brothers", and that Larry, his half-brother, was in court during the removal proceedings, but did not submit a statement to the court.

## C.  The IJ's and BIA's Decisions

The IJ determined that Oshodi was not credible. The IJ concluded that Oshodi's "acknowledged use of made up false names all cast doubt upon his forthrightness." The IJ also relied on the fact that Oshodi complained that a "substantial amount of his property was confiscated in Nigeria", but later "admitted that the properties were not in his name and that the deed was never transferred." The IJ further noted that Oshodi failed "to satisfactorily explain whether his father was living or deceased." Oshodi also stated in a sworn statement to immigration authorities that he feared harm in Nigeria because of his "dad", but then later testified that he said "granddad" and that the discrepancy was due to being rushed into signing the document without reading it.

The IJ observed that there "were also notable omissions and discrepancies between [Oshodi's] application and his testimony" regarding his siblings. Namely, Oshodi only listed three out of ten siblings on his application. He attempted to explain the omission by asserting that he thought he was supposed to put full siblings on the application despite the fact that two of the three siblings were half-siblings.

The IJ further noted that Oshodi "claimed that his father had regularly come and gone from Nigeria", which undermined Oshodi's claim that "he would be identified and detained in Nigeria because of his name." The IJ also observed that Oshodi's brother was sitting in court during the entire proceeding and failed to testify or submit an affidavit to corroborate Oshodi's claims. The IJ concluded that Oshodi should have "provid[ed] evidence that corroborat[ed his] testimony" and denied Oshodi's requests for asylum, withholding of removal, and relief under the CAT.[2]

---

[2]The IJ admitted a substantial amount of evidence, including the following: Oshodi's testimony; Oshodi's asylum application and supporting declaration; a police record from this country; a medical report; a psychiatric

The BIA upheld the IJ's adverse credibility determination and dismissed Oshodi's appeal. Oshodi then petitioned this court for review, and we remanded the case to the BIA to analyze and consider: "a) the impact of the REAL ID Act on the BIA's finding that petitioner's claims for relief and protection were not sufficiently corroborated; b) the legislative history of the REAL ID Act's credibility provisions, and its impact upon the immigration Judge's [sic] credibility determination; and c) any other issues the BIA deems appropriate to address if it chooses to permit further briefing from counsel."

On remand, the BIA concluded that the REAL ID Act codified the BIA's corroboration requirements and that Oshodi failed to provide corroborating evidence. The BIA further considered the fact that the REAL ID Act changed the "heart of the claim" analysis to a "totality of the circumstances" analysis and found "no clear error in the Immigration Judge's adverse credibility finding . . ." Oshodi filed a timely petition for review.

## II.   STANDARD OF REVIEW

"The decision that an alien has not established eligibility for asylum or withholding of removal is reviewed for substantial evidence." *Malkandi v. Holder*, 576 F.3d 906, 912 (9th Cir. 2009), *as amended* (citation and internal quotation marks omitted). "Under the substantial evidence standard, administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Id.* (citation and internal quotation marks omitted).

---

evaluation report; letters from Oshodi's family; and country conditions reports. The IJ admitted the following evidence for identification purposes only due to a lack of authentication: Nigerian police reports; Oshodi's 1981 hospital report; Oshodi's mother's 1968 death certificate; Oshodi's real estate documents; and Oshodi's relatives' letters regarding his open warrant.

"Under the substantial evidence standard, we may reverse a BIA credibility determination only if the evidence that the petitioner presented was so compelling that no reasonable factfinder could find that the petitioner was not credible." *Id.* at 917 (citation, alteration, and internal quotation marks omitted). "Where the BIA has reviewed the IJ's decision and incorporated portions of it as its own, we treat the incorporated parts of the IJ's decision as the BIA's." *Id.* (citation and alteration omitted).

## III.   DISCUSSION

### A.   The BIA's Inquiry Upon Remand

Oshodi contends that we should remand because the BIA failed to conduct an inquiry in accordance with our prior mandate.

On remand, a court is "free as to anything not foreclosed by the mandate, and, under certain circumstances, an order issued after remand may deviate from the mandate if it is not counter to the spirit of the circuit court's decision." *United States v. Perez*, 475 F.3d 1110, 1113 (9th Cir. 2007) (citation omitted).

**[1]** Addressing the first remand issue, the BIA determined that the REAL ID Act codified the BIA's corroboration standards, which place the burden on the applicant to provide corroborative evidence when the trier of fact requires corroboration. The BIA found that the IJ was correct in concluding that Oshodi failed to meet this burden, and referenced the section of the IJ's decision that analyzed in detail all aspects of Oshodi's claim that lacked corroborating evidence. Therefore, we conclude that the BIA sufficiently considered the REAL ID Act's impact on the BIA's finding that Oshodi's claims were not sufficiently corroborated.

**[2]** As to the second remand issue, Oshodi is correct in noting that the BIA did not extensively examine the REAL ID Act's legislative history; however, the BIA's analysis did not run counter to "the spirit" of our mandate. *See Perez*, 475 F.3d at 1113. Specifically, the BIA relied on our observation in *Jibril v. Gonzales*, 423 F.3d 1129, 1138 n.1 (9th Cir. 2005), that Congress provided "clear direction to IJs that there is to be no presumption of credibility," which means that "only the most extraordinary circumstances will justify overturning an adverse credibility determination."[3] The BIA also relied on *Don v. Gonzales*, 476 F.3d 738, 741 n.4 (9th Cir. 2007), to address the fact that the REAL ID Act removed the "heart of the claim" requirement. The BIA concluded that the changes in the REAL ID Act supported the IJ's adverse credibility finding despite the fact that some of the inconsistencies did not necessarily pertain to the "heart" of Oshodi's claim. We conclude that the BIA sufficiently followed the mandate. *See Perez*, 475 F.3d at 1113.

## B.   The Corroborating Evidence Requirement

Oshodi asserts that the IJ erred by basing his credibility determination on Oshodi's failure to produce corroborating evidence. Oshodi contends that the REAL ID Act and due process required the IJ to give Oshodi notice that he needed to provide corroborating evidence.

**[3]** We need not resolve this issue here, as the IJ provided Oshodi adequate notice.[4] Oshodi was advised:

---

[3]Oshodi places great weight on the fact that *Jibril* pre-dated the REAL ID Act. However, in *Jibril* we specifically addressed the REAL ID Act, noting that we would have been "obliged to deny Jibril's petition" if the REAL ID Act were in effect. *Jibril*, 423 F.3d at 1138 n.1.

[4]Our recent decision in *Ren v. Holder*, 648 F.3d 1079 (9th Cir. 2011), purports to hold that the REAL ID Act requires that "an IJ must provide an applicant with notice and an opportunity to either produce the evidence or explain why it is unavailable before ruling that the applicant has failed

> Put down all the reasons in detail, that you claimed to have been harmed, your fear of harm, the circumstances of it on the application. If you have corroborative evidence of your claim, I do strongly recommend that you submit it, especially under recent changes of the law and especially since you never previously applied. I'm letting you know that corroborative evidence is recommended. Do you understand it?

Even assuming that the REAL ID Act mandates notice that corroborating evidence will be required, we hold that the IJ did not err by basing his credibility determination on Oshodi's failure to produce corroborating evidence in this case.

## C.   The Totality of the Circumstances Standard

**[4]** "Under the REAL ID Act, in determining a petitioner's credibility, an IJ should consider the totality of the circumstances, and all relevant factors[.]" *Malkandi*, 576 F.3d at 917 (citation, alteration, and internal quotation marks omitted). These factors include:

> the demeanor, candor, or responsiveness of the applicant or witness, the inherent plausibility of the applicant's or witness's account, the consistency between the applicant's or witness's written and oral statements (whenever made and whether or not under oath, and considering the circumstances under which the statements were made), the internal consistency of each such statement, the consistency of

---

in his obligation to provide corroborative evidence and therefore failed to meet his burden of proof," *id.* at 1090. However, as that issue was not "presented for review" to the *Ren* panel, the quoted passage is dicta and need not be considered here. *Barapind v. Enomoto*, 400 F.3d 744, 750-51 (9th Cir. 2005) (en banc) (per curiam).

such statements with other evidence of record (including the reports of the Department of State on country conditions), and any inaccuracies or falsehoods in such statements, without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim, or any other relevant factor.

*Id.* (citation omitted).

**[5]** Contrary to Oshodi's accusation, the IJ did not rely on "rank speculation and conjecture and inconsequential factors." Rather, the IJ considered the totality of the circumstances, including Oshodi's use of false names; his inconsistent statements regarding his Nigerian property; his inconsistency regarding whether his father was living or deceased; his conflicting testimony regarding whether his father or "grandad" was involved in politics; his failure to list all ten siblings on his application; the fact that his father traveled to and from Nigeria; and his failure to provide corroborating evidence, including the fact that Oshodi's brother was present at the removal proceedings and did not testify or submit an affidavit. We conclude that the IJ's adverse credibility determination was well supported by this substantial evidence. *See Malkandi*, 576 F.3d at 917, 920.

### D. Oshodi's Due Process Allegations

#### 1. Oshodi's Testimony

Oshodi asserts that the IJ prevented him from testifying about his past torture and persecution, thereby depriving him of due process.

**[6]** Although the IJ interrupted Oshodi at the outset of his testimony, Oshodi continued to testify about his political activities; his fear of persecution should he return to Nigeria; his use of aliases; the notoriety of his last name; his father's

ability to travel "back and forth" from Nigeria; and why he only listed three siblings on his application. On cross-examination, Oshodi reiterated the facts of his asserted persecution; the fact that his father was deceased; his "granddad's" involvement in politics; and his Nigerian property. Therefore, we conclude that the IJ did not prevent Oshodi from testifying.

## 2. Medical and Psychological Reports

Oshodi argues that the IJ failed to consider the medical and psychological reports that corroborated his claims, thereby depriving him of due process.

"[A]n alien attempting to establish that the [BIA] violated his right to due process by failing to consider relevant evidence must overcome the presumption that it did review the evidence." *Larita-Martinez v. INS*, 220 F.3d 1092, 1095-96 (9th Cir. 2000). The BIA need not "refer to each exhibit." *Ghaly v. INS*, 58 F.3d 1425, 1430 (9th Cir. 1995). The BIA need only "provide a comprehensible reason for its decision sufficient for us to conduct our review and to be assured that the petitioner's case received individualized attention." *Id.*

**[7]** The IJ acknowledged that Oshodi "presented testimonial and documentary evidence in support of his claims for relief", and recognized that "there [was] enough evidence within the record to suggest past persecution and/or a well-founded fear of future persecution if parts of [Oshodi's] testimony [were] to be accepted." The IJ specifically addressed Oshodi's claims in a twenty-page decision. Likewise, the BIA noted with approval that the IJ "provided detailed factual findings regarding the testimony of the witnesses and the evidence presented, and that he reviewed the evidence of record as a whole." Therefore, we conclude that Oshodi has not overcome the presumption that the BIA reviewed Oshodi's evidence, and no due process violation occurred. *See Larita-Martinez*, 220 F.3d at 1095-96.

### 3.  Lack of Authentication

Oshodi contends that the IJ wrongfully excluded Nigerian police reports, his 1981 hospital report, and his mother's 1968 death certificate from the record due to lack of authentication,[5] thereby depriving him of due process.

[8] "[A]n immigration petitioner may seek to authenticate a public document by any established means—including through the petitioner's own testimony if consistent with the Federal Rules of Evidence . . ." *Vatyan v. Mukasey*, 508 F.3d 1179, 1181 (9th Cir. 2007). The IJ recognized that authentication is "not necessarily limited to the regulatory framework according to Ninth Circuit decision", but noted that Oshodi had not proffered "any other authentication of the materials". Therefore, we determine that Oshodi failed to properly authenticate the documents by certification or by his testimony. *See Vatyan*, 508 F.3d at 1181. Furthermore, any error was harmless because the BIA and IJ did not rely on Oshodi's claim of past medical treatment approximately 25 years ago or the cause of death of his mother nearly 40 years ago to assess Oshodi's credibility. *See Tucson Herpetological Society v. Salazar*, 566 F.3d 870, 880 (9th Cir. 2009) (recognizing "that the harmless error doctrine may be employed only when a mistake of the administrative body is one that *clearly had no bearing* on the procedure used or the substance of [the] decision reached") (citations and internal quotation marks omitted).

### E.  Oshodi's CAT Claim

Oshodi asserts that the BIA and IJ erred by failing to conduct a separate analysis of Oshodi's CAT claim, including consideration of Professor Mitchell's testimony; country con-

---

[5]Oshodi represents that he was *pro se* when the IJ declined to admit these documents. However, Oshodi's attorney was present when the IJ made his ruling.

ditions; a Nigerian newspaper article identifying Oshodi as an opponent to the current regime; and the medical and psychological reports.

The standards for asylum and relief under the CAT "are distinct and should not be conflated." *Farah v. Ashcroft*, 348 F.3d 1153, 1157 (9th Cir. 2003). Under the CAT, a "[p]etitioner must establish that it is more likely than not that he would be tortured if returned to the proposed country of removal." *Soriano v. Holder*, 569 F.3d 1162, 1167 (9th Cir. 2009) (citation omitted).

**[9]** The IJ specifically addressed Oshodi's CAT claim, including a review of Professor Mitchell's testimony and Nigeria's country conditions. Articulating the appropriate standard of proof, the IJ concluded that "although there may be a possibility of torture, [the IJ did] not find that the evidence shows that it is more likely than not." On appeal, the BIA need only "provide a comprehensible reason for its decision . . ." *Ghaly*, 58 F.3d at 1430. The BIA incorporated the IJ's findings and concluded that Oshodi did not present "any persuasive arguments on appeal as to why [the BIA] should reverse the [IJ] . . ." Therefore, we determine that the BIA decision, which incorporated the IJ's findings, provided a sufficiently comprehensible explanation for denial of relief under the CAT, with its attendant higher burden of proof. *See Soriano*, 569 F.3d at 1167; *see also Malkandi*, 576 F.3d at 917 (approving incorporation of the IJ's findings).

## IV.  CONCLUSION

The BIA sufficiently complied with our mandate because it considered the REAL ID Act's impact on the IJ's finding that Oshodi's claims were not sufficiently corroborated. Even assuming that the REAL ID Act mandates notice that corroborating evidence will be required, such notice was provided in this case. The IJ's adverse credibility determination was

supported by substantial evidence and Oshodi's due process rights were not violated.

**PETITION DENIED.**