**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

VERONICA VELASCO-CERVANTES,
                              *Petitioner,*

v.

ERIC H. HOLDER JR., Attorney
General,
                              *Respondent.*

No. 08-73295

Agency No.
A200-099-714

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
December 11, 2009—Seattle, Washington

Filed January 27, 2010

Before: Robert R. Beezer, Ronald M. Gould and
Richard C. Tallman, Circuit Judges.

Opinion by Judge Beezer

## COUNSEL

Rosaura Rodriguez, Rios Cantor, P.S., Seattle, Washington, for the petitioner.

Jeffrey R. Meyer, Office of Immigration Litigation, Washington, D.C., for the respondent.

## OPINION

BEEZER, Circuit Judge:

Veronica Velasco-Cervantes ("Velasco"), a native and citizen of Mexico, petitions for review of the Board of Immigration Appeals' ("BIA") dismissal of her appeal of an Immigration Judge's ("IJ") decision denying her petitions for asylum, withholding of removal and relief under the Convention Against Torture. Velasco asserts that she is entitled to relief because she was forced to serve as a material witness on behalf of the United States against illegal smugglers. We have jurisdiction pursuant to 8 U.S.C. § 1252(a)(1), and we deny Velasco's petition. Material witnesses for the government do not constitute a protected social group. *See* 8 U.S.C. § 1101(a)(42)(A).

## I

The events that lead to Velasco's instant petition for review started in "2003 when Velasco entered the United States ille-"

gally with her husband. Velasco returned to Mexico in July 2005 to be with her parents after her brother died from leukemia.

Velasco then attempted to return to the United States with a visitor's visa, but her visa application was denied. Unable to return to the country legally, Velasco sought the assistance of smugglers. She traveled to Tijuana, Mexico, where she met with a woman, Elba, who housed Velasco and warned her not to say anything about the smugglers if she was caught. Velasco spent approximately two days in the house, waiting for an opportunity to be smuggled across the border.

After those two days had passed, Velasco was taken to a second house where she waited another four days to cross the border. The conditions in the second house were dire, with the smugglers preventing anyone from leaving and providing only a minimal amount of food and water. While at the house, Velasco narrowly avoided being raped by one of the smugglers. Velasco eventually left the house and stayed with Elba's mother until the opportunity came to cross the border.

On January 26, 2007, a man came to get Velasco to take her across the border into the United States, warning her that she should not say anything about the smugglers if she was caught. The two began the journey to the border and, after the smuggler hid Velasco in a small compartment under the back seat of the car, were ultimately joined by three other smugglers. At the border, an immigration agent uncovered the compartment where Velasco had been hiding. The immigration agent questioned Velasco, who denied knowing the identity of the smugglers.

A criminal complaint was filed against the driver of the car the following day, and Velasco was named as a material witness in that case. To that end, Velasco was held in custody until February 3, 2006, when she was paroled into the United

States for one month while the case against the driver was resolved.[1]

During her time in custody, Velasco's husband contacted Elba and, in anger over the smugglers' mistreatment of his wife, told Elba that Velasco would tell the immigration officers "everything" about the smugglers. Elba warned Velasco's husband that Velasco should not talk. The smugglers proceeded to call Velasco's sister, parents and sister-in-law to issue similar warnings. They also repeatedly called Velasco herself, threatening to kill her if she helped the government.

On March 30, 2006, the Department of Homeland Security initiated removal proceedings against Velasco by filing a Notice to Appear. The Notice to Appear charged her, pursuant to 8 U.S.C. § 1182(a)(7)(A)(i)(I), with removability as an immigrant not in possession of a valid entry or travel document.

On August 17, 2006, Velasco appeared at a hearing and conceded, via counsel, her removability. The threats that Velasco had received from the smugglers prompted her, on October 16, 2006, to apply for asylum, withholding of removal and withholding under the Convention Against Torture because she feared retribution by the smugglers if she was forced to return to Mexico.

On March 13, 2007, a merits hearing was conducted on Velasco's case. The IJ issued a written decision on May 25, 2007. The IJ found Velasco credible, but denied all forms of relief. The IJ concluded that there was no evidence that Velasco had suffered past persecution on account of a protected ground nor any evidence that Velasco had a well-founded fear of future persecution. Likewise, the IJ held that Velasco had failed to demonstrate the requisite nexus between

---

[1]The driver eventually pleaded guilty, prompting the release of Velasco as a material witness.

the feared harm and one of the five protected grounds enumerated in 8 U.S.C. § 1101(a)(42)(A).

On June 15, 2007, Velasco appealed the IJ's decision to the BIA. In a single-member order, the BIA dismissed Velasco's appeal, affirming the IJ's denial of all forms of relief. The BIA held, among other things, that former material witnesses for the government do not constitute a particular social group.

Velasco's appeal to this court timely followed.

## II

We review questions of law de novo. *Aguilar Gonzalez v. Mukasey*, 534 F.3d 1204, 1208 (9th Cir. 2008). The BIA's interpretation of immigration laws is "entitled to deference." *Kankamalage v. INS*, 335 F.3d 858, 862 (9th Cir. 2003).

## III

Velasco contends that the BIA and IJ erred by concluding that she failed to demonstrate a well-founded fear of future persecution on account of a protected ground if she was forced to return to Mexico.[2] Specifically, Velasco contends that she would suffer harm at the hands of the smugglers due to her membership in a particular social group: former material witnesses for the United States government.[3] Velasco's

---

[2]We do not review Velasco's Convention Against Torture claim because she has waived review of that claim by only raising it in her reply brief. The IJ denied Velasco relief under the Convention Against Torture and the BIA affirmed that decision. On appeal to this court, Velasco failed to object to the denial in her opening brief and she has thereby waived review of the issue. *See Cedano-Viera v. Ashcroft*, 324 F.3d 1062, 1066 n.5 (9th Cir. 2003) (declining "to consider new issues raised for the first time in a reply brief").

[3]We do not address Velasco's alternate contention that she would face persecution on account of an imputed political opinion because Velasco has failed to exhaust that argument. Velasco did not explicitly raise this

contention is without merit and she is not entitled to asylum.**⁴**

**[1]** In order to establish eligibility for asylum under the Immigration and Nationality Act, a petitioner must show that she is a "refugee." 8 U.S.C. § 1101(a)(42)(A). To do so, a petitioner must demonstrate, among other things, a "well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." *Id; see also Zhu v. Mukasey*, 537 F.3d 1034, 1038 (9th Cir. 2008).

**[2]** As we have previously explained, a "particular social group" is "one united by a voluntary association . . . or by an innate characteristic that is so fundamental to the identities or consciences of its members that members either cannot or should not be required to change it." *Hernandez-Montiel v. INS*, 225 F.3d 1084, 1092 (9th Cir. 2000) (emphasis omitted). In making this determination, we look to "whether a group's shared characteristic gives members social visibility and whether the group can be defined with sufficient particularity to delimit its membership." *Arteaga v. Mukasey*, 511 F.3d 940, 944 (9th Cir. 2007).

**[3]** Here, Velasco has failed to demonstrate that former

---

contention in her asylum application, the written materials in support of her application, her notice of appeal to the BIA or her appeal to the BIA. The mere fact that, on the last page of her brief for the BIA, she cited a case that discussed imputed political opinion was completely insufficient to put the BIA on notice of the argument considering the fact that she cited the case for an entirely different reason.

**⁴**Because Velasco is unable to meet the standard needed for asylum, she is also unable to meet the higher standard—clear probability of persecution, *see Ahmed v. Keisler*, 504 F.3d 1183, 1199 (9th Cir. 2007)—needed for withholding of removal. 8 U.S.C. § 1231(b)(3)(A); *see also Farah v. Ashcroft*, 348 F.3d 1153, 1156 (9th Cir. 2003) (holding that applicants who fail to satisfy the lower standard of proof for asylum automatically fail to satisfy the higher standard for withholding of removal).

material witnesses for the government constitute a particular social group. Government material witnesses are often involuntarily recruited for the task. Moreover, former government material witnesses cannot be defined with "sufficient particularity," *see id.*, because any person of any origin can be involuntarily placed in that role in any type of legal proceeding. Our decision is in accord with precedent in our circuit holding that government informants also do not constitute a particular social group. *See Soriano v. Holder*, 569 F.3d 1162, 1166 (9th Cir. 2009) (holding "that a 'government informant' is not a member of a particular social group for the purposes of asylum").

**DENIED.**